## MAYNARD *vs.* WILLIAMS, Adm'r, et als.

1. The act of 31st January 1846, for the relief of married women, does not invest the wife with a separate estate in the property possessed by her at the time of the marriage, but the legal title by the marriage vests in the husband, subject alone to the payment of her debts contracted before, and of his contracted during the coverture.

2. On the death of the husband the property goes to his personal representative, subject to the same liabilities that attached to it in the hands of the decedent, and, after their payment, to distribution in the mode pointed out in the general statute of distributions.

Error to the Chancery Court of Lowndes. Tried before the Hon. Joseph W. Lesesne.

THE bill in this case, which was filed by the plaintiff in error against the administrator and heirs at law of Nathaniel Maynard, deceased, alleges that the complainant intermarried with the said Nathaniel Maynard, deceased, on the 11th of August 1847, and was possessed at the time of certain personal property, which is named in the bill; that the administrator since the death of her late husband has taken said property into his possession and is about to appropriate it, not only to the payment of the debts, contracted by the deceased during the marriage, which she admits he may legally do, but of those contracted before the marriage, and that it is his purpose to distribute whatever may remain after the payment of those debts among the children of the said deceased by a former marriage, jointly with herself. The bill prays that the administrator be compelled to deliver up to the complainant all of said property that may remain after the discharge of the postnuptial debts, &c. The chancellor rendered a decree directing that the administrator pay out of said property the debts, for which the bill admits it to be liable, and that the balance be distributed among the widow and children of the deceased as in other cases of distribution under the statute. From this decree the complainant appealed and now assigns it as error.

BOLING, for the plaintiff in error:

This case depends upon the construction of the statute of the 31st Jan. 1846, entitled "An Act for the relief of married women."—Pamphlet Acts, 24. This act excludes the creditors of the husband from the satisfaction of their debts out of the property of the wife, which she owned at the time of the marriage. In the event the husband's property is not sufficient to pay his antenuptial debts, (as is the case here,) and should he die leaving children by a former marriage, (as is also the case,) the question is presented, can a man's children inherit property through him, which his creditors cannot reach?

It is contended that this statute must be construed in connection with the other statutes, and the law in relation to descents. In this view a man's debts must first be paid before his pro-

perty descends to his children.    Then apply this principle
to the facts of this case, and the wife's property is secured to
her, and we must infer this was the intention of the Legislature.
The husband's antenuptial creditors being excluded, necessarily
excludes his children by a former marriage.    This is the legal
effect of the statute, no matter what the Legislature intended,
and no matter what may be said about the marital rights of the
husband attaching.

The court is to construe this statute with all others on the
same subject, and it is not the province of the court to patch
it up.

T. & J. WILLIAMS, for the defendants.

CHILTON, J.—By the sixth section of the act of 1846,
(Pamphlet Acts of 1845-6, 24,) it is provided that the property
of the wife at the time of the marriage, or which she may re-
ceive by descent, bequest or gift, shall not be subject to the debts
or liabilities of the husband, contracted or incurred before the
marriage, nor shall the husband be liable to pay the antenuptial
contracts or liabilities of the wife further than the property re-
ceived by the wife, but such property received by the wife
shall be liable to her debts, notwithstanding the termination
of the coverture.    The question before us, requiring a con-
struction of this statute, is, whether the wife, who brings an
estate to the husband subject to this law, after his death,
can have a decree as against his general distributees, perpetu-
ally enjoining them, or rather the administrator of the husband,
who is proceeding to administer the property for their benefit,
from interfering with it in their behalf?

It is clear that the evil intended to be remedied by the statute
was to prevent the wife from being reduced to want, by having
all the personal property in her possession swept away by the
debts, which the husband might be so unfortunate as to owe at
the time of marriage, and which also may be supposed to have
operated in some instances to prevent marriages otherwise suit-
able and desirable between the parties.    The Legislature must
be presumed to have passed the law with a full knowledge
of what the law was when they enacted it.    By that law the
husband became the absolute owner of all the personal property
in possession of the wife at the time of the marriage, or which

he might afterwards, during the coverture, reduce into possession as husband: And further, they must be presumed to have known that the law favored the vesting of the husband's marital rights, and required words of exclusion and not mere implication to prevent his marital rights from attaching. The question then recurs, how far did they intend to affect the husband's rights by the clause of the statute in question? How far did they design to change the existing law? If the object was to defeat the husband's right to the property entirely, the act would doubtless have been so worded, but so far from this, it is manifest that he is contemplated as the owner of the property. He is not liable for her antenuptial debts, "further than the property *received by her;*" but the property being exempted from liability for his debts, *contracted before marriage*, clearly implies that it shall be liable for such as are contracted after marriage, upon the maxim, "*expressio unius, exclusio alterius.*" This liability for his debts would seem to imply the right of the husband to dispose of it, for if he can charge it with his debts and thus cause his creditors by legal process to dispose of it, there would be no reason for saying he might not be permitted to sell or dispose of it himself, which might often be necessary to pay his debts and prevent sacrifices usually attendant upon sheriffs' sales. This power cannot, however, consist with a separate estate in the wife. He has then, in our opinion, the right to the property, but freed from the liability to be taken in payment of his debts, contracted before marriage, and subject to the debts of the wife. The protection and benefit to the wife, it is true, was the main object of the enactment, but we can readily see the propriety of not excluding the husband's right to the property, but of leaving him at liberty to exercise his discretion as to any disposition he might choose to make of it, the Legislature no doubt supposing that his regard for his wife, and the manner of his acquiring the property, as also his solicitude for her comfortable subsistence, would be sufficient guaranties to his prefering her claims to those of any one else. But he dies leaving five children by a former wife—what then? Does the entire property go to the wife? This would exclude the husband's debts contracted, it may be, upon the faith of it, while he held it as owner. Can it be administered upon, under the general law respecting administration, as the absolute property of the

husband? The answer is, no; for this would defeat the design as well as the letter of the act. It would be to make the property liable for the husband's antenuptial debts, which the letter of the statute, as well as its spirit, forbids. Besides, the wife would be deprived of all benefit from it, if those debts should require the whole of it for their satisfaction. Thus the mischief which the statute was designed to prevent would be introduced. We must then hold, that as the intestate owned the property, it goes to his administrator, but as the property in the hands of the intestate in his life-time would not have been liable for his debts, contracted before marriage, so neither shall it be liable in the hands of his administrator, but it is liable as well for the debts of the wife contracted while sole, as for the subsequent debts of the husband. For here again the statute steps in and says the debts of the wife shall be charged upon it, notwithstanding the termination of the coverture. These debts— (those of the wife before marriage and those of the husband thereafter)—must be first settled. Here the statute stops and here we must stop, so long as we are disposed to administer, not to make the law. The debts having been paid, except the antenuptial debts of the husband, which are expressly excluded from satisfaction out of the property, the administrator must distribute the property according to our statutes of distribution.— These views accord with the decree of the chancellor, and it must consequently be affirmed.

This decision involves the anomaly of property being distributed to the wife and children of the intestate as his property, without paying a portion of his debts, but the Legislature and not the court has so willed it. There is nothing, however, very unreasonable in excluding the antenuptial debts of the husband from satisfaction out of the wife's property, since in most cases his distributees would be hers, and the framers of the statute may have contemplated, what is the necessary result, that their children should enjoy the property to the exclusion of the husband's creditors, whose debts existed before the marriage.